MARY E. GREEN, PROSECUTRIX, v. TOWN OF MONTCLAIR,
RESPONDENT.

Submitted May 7, 1940—Decided June 6, 1940.

Before BROGAN, CHIEF JUSTICE, and Justices PARKER and
PERSKIE.

For the prosecutrix, *Nathan A. Whitfield.*

For the respondent, *George S. Harris.*

The opinion of the court was delivered by

PARKER, J.  The controversy in this case relates to the
validity, and the effect as a lien on lands of prosecutrix, of
two assessments, one made in 1928 and the other in 1930.
The 1930 assessment was for the construction of a sewer in
Alexander Avenue, Montclair, fronting property on which
prosecutrix held a mortgage, and of which in 1936 she became
owner by deed from the mortgagor.  The 1928 assessment
was for the cost of sewer connections between that property
and the sewer.  The outstanding facts in the case are that the
sewer was built to connect with a projected sewer in an
adjoining municipality, which latter sewer was not then built,
never has been built, and so far as appears may never be
built.  It is stipulated that at the time prosecutrix took her
deed, the two "assessments did not appear as liens against
the said premises and were carried on the books of the town
of Montclair under the classification called 'Schedule B' and
not on the regular books of assessment which were then pres-
ently due and payable."  Shortly after becoming owner, prose-

cutrix contracted to sell the premises, and was then confronted with the assessments, of which she had never previously heard. The purchaser refused to take title until the matter of these assessments should be satisfactorily adjusted, and in order to consummate the sale, prosecutrix has placed in escrow a sum of money equal to the amount of the assessments. The town has never taken any proceeding to enforce collection; and has never charged any interest on them. Under this writ she asks that this court set them aside.

It is elementary that an assessment for benefits cannot be enforced until the benefit has been conferred. And it seems clear that the assessments now before us are of the class formerly and perhaps still known as "prospective assessments." Such a class seems to have been recognized by this court in *New Jersey Railroad Co.* v. *Elizabeth,* 37 *N. J. L.* 330, 335, but the land was held not subject to lien until the benefit had been actually received. *Kellogg* v. *Elizabeth,* 40 *Id.* 274, 277.· In the charter of Bayonne there was express provision for a general sewerage scheme which could be completed in installments, and property affected assessed if and when the actual benefit was conferred; and in 1887 there was a general act to much the same effect, both of which are discussed in *Central New Jersey Land Co.* v. *Bayonne,* 56 *Id.* 297. Still later, in 1895, there was a similar act. *Pamph. L.,,p.* 95. In the Central New Jersey Land Company case the act of 1887 was expressly held constitutional. The element of prospective benefits does not seem to have been embodied in the "Home Rule" act of 1917; and as we read section 25 of that act (amended in *Pamph. L.* 1921, *p.* 162) the making of the assessment is deferred until the benefit has accrued. The precise point, however, is unimportant for present purposes. One thing is clear; that the so-called "assessments" for the laying of the sewer in Alexander Avenue and for the connection thereof with the abutting property, if legal at all, as to which we need express no opinion, are not in anywise a present lien on such abutting property, and cannot in any event become such until a present benefit is conferred. Such is the uniform holding of the cases cited above, and of many others in this state.

It is suggested that the prosecutrix is in laches, and the case of *United Owners Realty Co.* v. *Lodi,* 99 *N. J. L.* 529; 125 *Atl. Rep.* 111, is cited in support of this claim. It is conceded that the rule of laches does not apply in a case of unconstitutionality. *Meredith* v. *Perth Amboy,* 63 *N. J. L.* 520; *Walsh* v. *Newark,* 78 *Id.* 168; *Mitsch* v. *Riverside,* 86 *Id.* 603. In the Lodi case, it is true, the court intimates that the assessment plan therein involved was constitutional; but does not disclose what the plan was, except that there were certain properties assessed "which have no access to the sewer." But it is quite conceivable that a property may be presently benefited by a sewer though without direct access; and hardly conceivable that the court intended to overrule a line of cases holding that an assessment without corresponding benefit is unconstitutional.

Our conclusion is that the two so-called "assessments" are not presently liens upon the property in question; and that no lien on that property for the sewer and connections will become effective unless and until suitable drainage through the sewer is established. The question whether, when such drainage is established, the present "assessments" will ripen into liens, or a new assessment should be then made, is one that need not be decided at this time. Of course the land is liable to assessment if, and when, the benefit is actually conferred.

The writ will be dismissed, but without costs.